## Case No. 13,414.

STEVENS et al. v. WILLIAMS et al.

[1 Morr. Min. Rep. 557; Corp. Min. Code, 65.]

Circuit Court, D. Colorado. 1879.

MINING LAWS—DEFINITION OF TERMS—RIGHT TO FOLLOW DIP—CHARACTER OF DEPOSIT

[1. The words, "in place," as used in the act of congress of May 10, 1872, as descriptive of the lodes or veins for which mining claims may be taken out under the act, mean the general body of the country, which remains in its original state, unaffected by the action of the elements, as distinguished from the superficial mass known as alluvium, detritus, or débris. It is what miners usually call the "country," or the "country rock." And a vein or lode is "in place," within the meaning of the act, when it is inclosed in the general mass of this rock.]

[2. "Vein," or "lode," as used in the act, embrace any description of deposit which is inclosed in the general mass of the country rock, without regard to the technical geological distinctions in respect to beds, segregated veins, gash veins, true fissure veins, or mere deposits; and it is immaterial as to the character of the vein matter whether it be in a solid, or in a loose, disintegrated, state.]

[3. "Top," and "apex," as used in the act of congress, mean that part of the vein or lode which comes nearest to the surface, and may include a part which stands in the solid rock below a considerable body of the superficial mass.]

[4. Under this act a location may include 1,500 feet in length along the linear course of the lode and 150 feet on each side of it.]

[5. If a locator fails to locate his claim parallel with the apex of the vein, so that the latter passes out through a side line thereof, he can take nothing thereunder except what lies within the boundaries of his claim, and cannot follow the lode if it passes beyond the vertical side lines.]

[6. The right given by the statute to follow the dip of a vein, although it "may so far depart from the perpendicular * * * as to extend outside the vertical side lines," is not limited to veins having an inclination of 45 degrees or less from the perpendicular, but extends to all veins which do not lie in a practically horizontal position.]

[7. If in following a vein or lode, which is found at the point of union between rocks of different ages and different formation, as in the case of porphyry and lime, the line of contact

should be found barren of ore for a considerable distance, not by reason of a mere interruption or break, extending only a few feet, but because the two kinds of rock come together, and carry nothing whatever between them, then the deposits should no longer be called a vein or lode, and the owners of the claim would have no right to another body of ore found at a considerable distance beyond.]

HALLETT, District Judge (charging jury). The first matter to which I shall ask your attention is that the reference in the law is to veins or lodes in place, bearing any valuable metals, which are here spoken of. The language of the act is, mining claims upon veins or lodes of quartz or other rock in place, bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits. That is the language of the act, used in describing the kind of mines or valuable deposits which may be taken out under the act, and the peculiar feature of that description to which I wish to call your attention is that they are lodes or veins in place. The exact language, as I before read, is "veins or lodes of quartz or other rock"; that is, veins of quartz or other rock, or lodes of quartz or other rock (the last words being added to the first by way of description), that may contain any of these valuable metals. That is to say, any kind of rock bearing any of these metals,—but whatever the rock, whether it be quartz or other rock, it must be in place. And, as to the meaning of these words, "in place," they seem to indicate the body of the country which has not been affected by the action of the elements; which may remain in its original state and condition, as distinguished from the superficial mass which may lie above it. There are quite a number of words which may be applied to that superficial deposit; that which is movable, as contrasted with the immovable mass that lies below, such as alluvium, detritus, débris. Perhaps the last word comes as near as any other that is in use—the word débris. A witness in another case here used a word which he appeared to have invented for the occasion, which appeared to me particularly significant; he called it "tumble stuff," which conveys to my mind pretty distinctly the idea of that which may have been brought to its position by the action of the elements, as distinguished from the vast body of earth which lies below. In speaking of these deposits, which are in veins or lodes, and of the general mass of rock from which they may be distinguished, miners usually call the surrounding mass of rock, in which the lodes or veins are found, the "country" or the "country rock." By that word they signify the character and description of the general body of the mountain, whether it is granite, or gneiss, or syenite, or porphyry, or any other of the many different kinds of rock. They use that word to describe the general mass of rock of which the mountain is composed, as distinguished from that which is found in the vein or lode. And when this

act speaks of veins or lodes in place, it means such as lie in a fixed position in the general mass of country rock, or in the general mass of the mountain. As distinguished from the country rock, this superficial deposit may have been brought into its present position by the elements; may have been washed down from above; or may have come there as alluvium or diluvium, from a considerable distance. Now, whenever we find a vein or lode in this general mass of country rock, we may be permitted to say that it is in place, as distinguished from the superficial deposit, and that is true, whatever the character of the deposit may be; that is to say, as to whether it belongs to one class of veins or another; it is in place if it is held in the embrace, is inclosed by the general mass, of the country. And, as to the word "vein" or "lode," it seems to me that these words may embrace any description of deposit which is so situated in the general mass of the country, whether it is described in any one way or another; that is to say, whether, in the language of the geologist, we say that it is a bed, or a segregated vein, or gash vein, or true fissure vein, or merely a deposit; it matters not what the particular description of it may be; in respect to these distinctions which are observed by geologists in defining the different classes of deposits that lie in the embrace, or are inclosed by, the general mass of the mountain. In all cases I suppose that they are lodes, if not veins. It may be true that many of these deposits will not come under the description of veins, as known to geologists, but if they are not so described,—if they cannot be so correctly described,—they are, at least, lodes, and are recognized as such by miners in their search for them. In other words, whenever a miner finds a valuable mineral deposit in the body of the earth, as I have described it, he calls that a lode, whatever its form may be, and however it may be situated, and whatever its extent in the body of the earth. The books make some distinctions between beds and lodes, and they make distinctions in the different classes of veins, as you have heard from counsel, but these distinctions are not important in relation to this answer of the discovery and taking of these mineral deposits. It has been decided that congress, in passing this act, intended by this description to embrace and include all forms of deposit which are located in the general mass of the mountain, by whatever name they may be known, and the distinctions which are adopted by geologists in respect to the different kinds of veins are not important except for one question and for one purpose, which I may invite your attention to further on. So that we may say, gentlemen, with respect to the case which is now before you, that, whether this may be called a true vein or a contact vein, or a bed; whether it lies with the stratification or transversely to it, the matter is of no importance for the pur-

pose of determining this question; it is in any event a lode, if it lies in place, within the meaning of this act. And it is in place if it is inclosed and embraced in the general mass of the mountain, and fixed and immovable in that position. Perhaps I ought to say further, in view of some things that were said by counsel in the argument. that it is not material as to the character of the vein matter, whether it is loose and disintegrated, or whether it is solid material. In these lodes the earth that is found in them, the earthy matter which may be washed or treated with water or steam, is often the most valuable part. It was never understood here or elsewhere, so far as I know, that such earthy matter was not embraced in the location, because it was of that character. It is the surrounding mass of country rock; it is that which incloses the lode, rather than the material of which it is composed,—which gives it its character; so that even if it be true, as counsel have stated in the course of their arguments, that this is mere sand,—is a loose and friable material which cannot be called "rock," in the strict definition of that word; if that be true, it does not affect the character of the lode. If it were all of that character, it would still be in a vein or lode in place, if the wall on each side—the part which holds the lode—is fixed and immovable.

That is, perhaps, sufficient as to the character of the deposit. and that which may be located in the manner in which the evidence tends to prove that the location was made; and we have now to consider the question which was so much discussed by counsel, as to the location with reference to the top and apex of the vein. And upon that point it is clear, from an examination of the act, that it was framed upon the hypothesis that all lodes and veins occupy a position more or less vertical in the earth, that is, that they stand upon their edge in the body of the mountain; and these words, "top" and "apex," refer to the part which comes nearest to the surface. The words used are "top" and "apex," as if the writer was somewhat doubtful as to which word would best describe or best convey the idea which he had in his mind. It was with reference to that part of the lode which comes nearest to the surface that this description was used; probably the words were not before known in mining industry,—at least, they are not met with elsewhere, so far as I am informed. Perhaps they were not the best that could have been used to describe the manner in which the lode should be taken and located. But, whether that be true or not, they are in the act of congress, and there seems to be little doubt as to their meaning: they are not at all ambiguous. In some instances they may, perhaps, refer to the floe of the lode: that is a part of the lode which has been detached from the body of mineral in the crevice, and flowed down on the surface; in oth-

ers, where there is no such outcrop, they may mean. that part which stands in the solid rock, although below a considerable body of the superficial mass which I have attempted to describe to you. We are all agreed, however (the courts and counsel, every one), that that is the meaning of the words; that they are to be taken in some such sense as that,—as being the part of the lode which comes nearest the surface; and the act requires that the location shall be along the line of this top or apex. Supposing the lode to have a somewhat vertical position in the earth, with this line of outcrop or of appearance on the surface, or nearest to the surface. it shall be taken up and occupied by the claimant as his location, and he must find where his top and apex is, and make his location with reference to that. So that by this act he might claim fifteen hundred feet in length along the linear course of the lode, and would have one hundred and fifty. feet on each side of it, making it three hundred feet in width and fifteen hundred feet in length. We have already reached this conclusion in this state. Walfley v. Lebanon Min. Co., 4 Colo. 112; Patterson v. Hitchcock, 3 Colo. 533. The supreme court of the state had adopted that construction of the law, that if he fails in that, in so far as that his location is not upon the line of this lode, that he can claim no more than he has included within his side lines; that is to say, he makes his location with reference to the top of the lode, with which the lines of the location must be parallel; and if he fails in that, if the line of the lode departs from the surface lines of his location anywhere upon the length of it, it is so far an invalid location, that he can take nothing of the lode that lies without the lines of the location. This, then, was the method pointed out by this act, and by the law of the state, for taking up these claims, that it should be along the line and top and apex of the lode; and if this is done, if the location is so made, then the language of the act is express, that he shall have, not only so much of the lode within the lines as lies in its linear course, but that if the lode, in its downward course into the earth, departs from these lines upon the sides. passes out upon its dip,—that he shall have the part, also, which lies beyond. Congress seems to have appreciated the fact, which is known to all miners, that there are very few, probably no lodes, that are exactly perpendicular to the surface of the earth; they incline one way or the other,—that is, either to the right or left,—extending along the course of the lode. It seems to be universally true that they depart from the perpendicular in one direction or the other, and if, in so departing,—if, in their downward course into the earth, they depart from their side lines, or the planes of those lines extending downward vertically,—then he is to have that part which lies without, as well

as within, the surface lines. The language of the act upon that point is, "of all veins, lodes and ledges, throughout their entire depth, the top or apex of which lies inside of such surface lines extended downward vertically, although such veins, lodes or ledges may so far depart from the perpendicular in their course downward, as to extend outside the vertical side lines of such surface location." Now, it was said with reference to the lode which is now in litigation here.—the position was taken by the counsel for the defendant,—that whenever, in its departure from the vertical course, it reaches an inclination which is greater than forty-five degrees, that then it is no departure from the perpendicular, but from a horizontal plane, and therefore it is not within the terms of the act. That position, gentlemen, is merely a verbal distinction, which goes for nothing at all. Of course, in its departure, it may depart in any degree up to the horizontal plane, and it is still a departure from the perpendicular throughout the whole course, until it comes to a right angle from the perpendicular. I think, perhaps, that we may illustrate that with these books. If we say that (illustrating) is the vertical position, as you perceive it is, then, departing from the perpendicular in every angle as you come from this vertical position, carrying it up until you come to a horizontal position (which is ninety degrees. as I understand it, of the arc of a circle), it is still a departure from the perpendicular. In that view, we have been brought to consider, in the present instance. whether the lode or vein lies in a horizontal position; that is, whether the angle of the vein is between the vertical and horizontal. The rule should be that every departure up to that which I have named is but a departure from the perpendicular, and it appears to be exactly within the provisions of this act, if the vein clearly extends outside of the limits of the surface in any angle between the perpendicular and horizontal. I agree that if we should ever find a lode which, in its course, extends precisely on the plane of the horizon,—and it is extremely doubtful whether we shall ever find one in that position,—but if we should ever find a lode which is precisely in that position, there may be some difficulty in locating it under this act; but if you find from the evidence, that there is a lode or vein in the position in which this has been described by the witnesses, and that it is in rock in place, as I have described it to you, I think there can be no difficulty in the present instance in respect to that.

This brings us to a question, gentlemen, which really is the important question in this case, and that is whether there is any lode in the position which has been mentioned by the witnesses; and in that connection, in the consideration of that question, the character of the deposit—as to whether it is a true fissure vein, or a contact deposit, or a bed, or something of that kind—is of some value; because,

in respect to fissure veins. we accept the cavity or chasm which is found between walls, and filled with what they call "vein matter," as indicating or showing the existence of the lode, even if the matter which is found in it is not very valuable,—that is, if there is anything which usually accompanies valuable ores or minerals. But, in respect to this kind of deposit, my impression is that it is to be known, called, and regulated as an irregular deposit; one which, if it should be interrupted for any considerable distance,—that is, if what they call the "contact," or junction between the porphyry and lime, should become barren for a considerable distance,—that it should no longer be called a lode. As I understand it, this line which exists when there is a union of rocks of different ages and different formation, may carry ore, or it may not; it may be productive, or it may be barren; and if this should be found at any point in the course to become barren, and remain so for any considerable distance, I do not see how it could be called a lode in that part of it, so that it could be followed with the result to claim what lies beyond. I should say, that with reference to such a line of contact between rocks of different formation, that to find that line of contact in one place. unless there were in it valuable minerals which were carried along with something like a continuous course along the line of contact, that no lode would be discovered. It could not be said that any had been found until such minerals were found. I do not mean by this, that any slight interruption for a few feet of the valuable part of the ore would have the effect to show that the deposit was broken in its continuousness. I do not mean that, nor do I mean that if any dyke or other extraordinary foreign matter should be interposed in the course of the lode so as to cut it off, and it should follow on immediately after that interruption, that would be regarded as such a displacement in the continuity of the deposit as would deprive it of its regular character. Phillpotts v. Blasdel, 8 Nev. 61. Whenever it may appear that the fissure has existed at one time, or at any time, with a continuous body of ore in it, which may have been interrupted by some subsequent convulsion, the character of the deposit would remain the same as if the interruption had never occurred. But if there was such an intervening space in the "contact," as these witnesses call it, barren in its continuity, as might show a separate and distinct body of ore, which had always been such, I should say that it would not pass with the grant of the first. It may help you, gentlemen, for me to express this in other language, and ask you to extend the line which is laid down on that map (showing), for some distance further, and to suppose that, in the course of that line, you find that there is at the head of the deposit, that nearest the surface, a hundred feet or more of continuous ore lying upon the line between the porphyry and the lime. and then there should be an interruption of a hundred

feet or more of this contact which is perfectly barren; the lime and the porphyry coming together carrying nothing whatever, and below that, again, another body similar to that which was found at the head, the position which I think might be taken upon this—the position of these ore bodies—would be that there would be two lodes, rather than one, the first above and the second below; but if there is a continuous body of ore, or practically continuous, and there is no such interruption as exhibits other than a casual and fortuitous displacement, then it would be one lode.

I think, upon that explanation, gentlemen, you will be able to determine whether there is. in that sense. a fixed body of ore, extending from the upper part of these workings to the end of them; if that is its characteristic, then it is to be regarded as one and the same lode, though it may have departed from the side line, to a considerable distance. and have only an angle of thirteen. fourteen or fifteen degrees, as the witnesses nave described it, from the plane of the horizon. There may be other deposits in that neighborhood, gentlemen. which show entirely different features, or show the same features, but whether that be true, or not. is not a matter for present consideration. We determine these questions only upon what appears in this case, and without reference to any others that may arise in the same locality. Other deposits in this neighborhood may be of an entirely different character; they may be such as can not in any sense be called lodes at all. Whether this be true or not, is not for present consideration. We determine this case. as I said before. upon the evidence given here, leaving other questions which may arise in respect to other locations to the facts as they may be developed in respect to them.

[See Case No. 13.413.]