[No. 530. October 2, 1893.]

## ILLINOIS SILVER MINING & MILLING COMPANY, PLAINTIFF IN ERROR, v. DANIEL G. RAFF ET AL., DEFENDANTS IN ERROR.

MINES AND MINING—EJECTMENT—TESTIMONY OF NONEXPERT WITNESS.—EVIDENCE.—In an action of ejectment by mineowners against the owner of an adjoining mine, where a nonexpert witness testified there was no foot wall, it was improper to ask him, "If there is a foot wall, then there is a vein?" the question being a hypothetical one, demanding an answer to a supposition, the condition to sustain which was denied by the witness.

ID.—EJECTMENT—ISSUE, EXISTENCE OF VEIN AND APEX—INSTRUCTIONS.—Where, in such action, the main issue was as to the existence of a vein and of an apex, it presented a question of fact for the jury, and the court did not err in instructing them that, if they believed the evidence, they should find for the plaintiffs.

ID.—MODEL OF MINES, ADMISSIBILITY OF—EVIDENCE.—In such case, where two witnesses who had worked on the property in question, made a small model of the mines, which they admitted was not a perfect facsimile, and the court refused to admit it as such, but admitted it for the purpose, declared to the jury, of explaining the testimony of the witnesses, and several witnesses testified to and from the model, and both parties used it,—it was not error to permit the jury, at their request, to take the same into the jury room, on retiring.

ERROR, from a judgment in favor of plaintiffs, to the Third Judicial District court, Grant County. Judgment affirmed; Lee, J., dissenting.

The facts are stated in the opinion of the court.

NEILL B. FIELD for plaintiff in error.

WARREN, FERGUSSON & BRUNER, JAMES H. FIELDER, and THOMAS H. HEFLIN for defendants in error.

Every fact that the plaintiff in error assumed the burden of proving to justify its invasion of the ground of defendants in error had been denied by all the witnesses of the defendants in error. Iron-Silver Mining Co. v. Cheesman, 118 U. S. 529.

Section 2063, Compiled Laws, New Mexico, defines what may be taken by the jury in its deliberations. The model was made by the witnesses Barber and Reay, and was admitted by the court in connection with the testimony of those witnesses, as illustrating the facts testified to by them; and, though not evidence in itself, properly went to the jury room with other models, maps, and diagrams. Wood v. Wood, 28 Pac. Rep. 709; 12 Am. and Eng. Encyclopedia of Law, 376; Wood v. Willard, 36 Vt. 82; Hale v. Rich, 48 Vt. 216; 2 Thompson on Trials, sec. 2574, et seq.; Abbott's Trial Brief, 165; Neff v. City of Cincinnati, 32 Ohio St. 215.

The laws of the territory seem to require of the court the submission by the court of questions of special findings in addition to the general verdict. Laws, New Mexico, 1889, chapter 45, page 97.

The party claiming the right to follow the vein outside his side lines into the property of another, must show that he follows a vein whose apex is in his own ground. Iron-Silver Mining Co. v. Murphy, 3 Fed. Rep. 368; Iron-Silver Mining Co. v. Elgin Mining Co., 118 U. S. 196; Hyman v. Wheeler, 15 Morrison's Min. Rep. 519; Leadville Mining Co. v. Fitzgerald et al., 4 Id. 380; Stevens v. Williams, 1 Id. 557, 566; Stevens v. Gill, Id. 576; Gilpin v. Sierra Nevada, etc., 23 Pac. Rep. 547.

If the mineral-bearing body passes out of both side lines, then the locator on such body can not pursue it beyond his side lines. Iron-Silver Mining Co. v. Murphy, 1 Morrison's Min. Rep. 548; Iron Mine v. Loela Mine, Id. 548; Stevens v. Williams, Id. 575; Gilpin v. Sierra Nevada Con. Co., 23 Pac. Rep. 550; Wade, American Min. Law, p. 64; Leadville Mining Co. v. Fitzgerald, 4 Morrison's Rep. 380.

A joinder or union or contact of two· different kinds of rocks or formations·is not a mineral vein or lode, unless the intervening space contains ore, and occasional occurrences of ore therein does not make it a·vein. Stevens et al. v. Gill, 1 Morrison's Min. Rep. 576.

Whether a vein exists, whether its apex is within the side lines of the party seeking to follow ore into the property of another, whether the ore is continuous, and whether the boundaries are clearly defined, are all questions of fact to be determined by the jury. See citations supra.

Ore disseminated at intervals, or found in channels, chutes, cavities, pockets, or other irregular occurrences, at intervals in quartzite, without ore connections between the same, is not a lode, ledge, or vein, allowing the owner thereof to follow the same beyond his side lines. Cheesman v. Shreeve, 40 Fed. Rep. 787; Hyman v. Wheeler, 29 Id. 354.

A limestone zone, such as the evidence shows exists in this case, is analyzed and classified by Justice FIELD in Eureka Mining Co. v. Richmond Co., 9 Morrison's Min. Rep. 587–590. See Morrison's Min. Rep. 97.

The contact between the shale and lime on the Illinois mine, on which the location was made, is curved in shape, and passes out of that mine through its west side line, near the southwest corner, and about

five hundred feet from the northwest corner, making the side lines end lines; and, in that case, the right to follow a vein on its dip beyond the side lines does not ·exist.   Argentine Co. v. Terrible Co., 122 U. S. 478.

FALL, J.—This cause coming here from the Third district, involves as the main issue, the old, vexed "apex" question, which has been the subject of litigation in the courts of every mining state in the Union, and which has more than once been considered by the supreme court of the United States.

The law as to following a vein of metal outside the ·side lines of a claim, the "apex" of the vein being within the side lines, is well established, the right ·determined by congressional enactment and judicial ·decision.

But while what constitutes an "apex" and a "vein" ·are questions of law, the existence of either or both present questions of fact to be passed upon in each case as it arises, under the law applicable to the state of facts as established.

The assignments of error in this cause are numer- ·ous, and before considering the same seriatim, it is well to set out as succinctly as possible the contention of the respective parties as developed by the record.

The plaintiff in error is the owner of a patented ·claim, the Illinois, situated in the Kingston district, in Sierra county.

The defendants own the "Calamity" claim lying ·east of and adjoining the Illinois.   Plaintiffs, in work- ing their ground, passed out under the east side lines of the Illinois and into the ground of the Calamity, ·extracting ore in large quantities therefrom.

Defendants brought suit in ejectment, and upon the second trial in the county of Grant, venue having been changed from Sierra, obtained verdict with $1 ·damages, and costs.

The contention of plaintiff is that in taking ore from the ground of the Calamity, they followed a vein, having its apex within the side lines of the Illinois, on its dip, under the east side line of the last mentioned claim, into the Calamity ground. That this vein consisted of different chutes, veins, gashes, pockets, or bodies of ore, occurring in lime, or in the contact between lime and shale, all connected by stringers or otherwise, forming a continous contact vein with its apex on the Illinois, a shale hanging wall and blue lime foot wall, and ore in the different pockets or places when found, while of different values, of practically the same characteristics.

MINES and min- ing: ejectment: testimony of non-expert witness: evidence.

The defendants contend that within the meaning of the law, there is no vein either upon the Illinois or Calamity. That the ore occurs in an immense lode or mineral-bearing lime zone; that the ore, whether deposited in the pockets, gashes, pipes, or other forms of infiltration, sublimation, or otherwise, was so deposited without reference to the shale or hanging wall, that the entire body of lime practically is mineralized, or at least that deposits of mineral of the same character are found from the surface of the lime, whether overlain by shale or exposed to the air, down to the lowest depths at which work has been done. That there is no apex upon the Illinois claim; that the so-called apex is a point upon the lime mineral lode or zone whence the shale has been eroded upon the throwing up in a rolling form of said lime zone. That said bare spot extends westward across the side line of the Illinois, and onto the adjoining property. That the ore is found upon this bald lime in the same form and of the same character as around its edges where the shale still exists, and under the shale when same remains intact. That the shale is not a hanging wall

in the sense that it forms the nonmineral-bearing rock overhanging a vein or body of mineral which in turn is supported or rests upon another nonmineral-bearing rock of the same or different formation from the hanging wall, but that the shale is merely the capping. There is no contact vein, while there is a contact between the shale cap and the lime mineral-bearing mass, lode, or zone.

Defendants further contend that if it is conceded that the Illinois and Calamity are located upon a "vein" of mineral, that then the apex of that vein is to the north of both and upon the Andy Johnson and Brush Heap mines. The testimony is very voluminous.

As to the first assignment, that the court erred in sustaining the objection to the question asked witness Reay, "If there is a foot wall, then there is a vein?" we think that the objection was properly sustained. Witness had just testified that there was no foot wall; he was not testifying as an expert, and the question demanded an answer to a theoretical supposition the condition to sustain which had been denied by the witness.

The second assignment is to refusal of the court to instruct the jury that if they believed the evidence they should find for the defendant.

The two theories which have been alluded to, and upon which this cause was tried, were each supported by the testimony of the numerous witnesses, and we agree with the lower court that as to the main points at issue, the existence of a vein and of an apex, there was, to say the least, sufficient evidence of the nonexistence of both, not only to justify, but to demand, the submission of the case to the jury.

Issue: existence of vein and apex: instructions.

The third assignment of error, that the court should

not have permitted the jury to take with them a small
MODEL of mines: model when they retired, because the
admissibility of: same had not been admitted in evidence,
evidence.
is not well taken. The model in question
had been used by two witnesses to explain their testi-
mony. They were miners who had worked on the
property in question; they had made the model, and
they admitted that it was not a perfect mechanical
facsimile of the mines; the court refused to admit it
as such, but it did admit it for the purpose, distinctly
declared, to the jury, of explaining the testimony of
the witnesses. Several other witnesses testified to and
from it; it was used by both plaintiff and defendant,
and when the jury retiring, asked for the model it was
given them, and we think properly.

The fourth, fifth, sixth, seventh, and eighth assign-
ments are to the submission of special questions, num-
bers 3, 5, 6, 8, and 9 by defendant to the jury.

We think that these questions were material to the
issues and were properly submitted, and number 3,
which was only to be answered upon an affirmative
reply to another question, was unanswered by the jury,
as was number 6.

The other assignment of error relates to the charge
of the court to the jury, leaving it as a fact to be
determined by them whether a vein existed upon the
Illinois mine, and whether there was an apex, and as to
the law under the rules of which as applied to the evi-
dence they were to determine the existence or nonexist-
ence of a vein and apex.

We think that under the evidence the court properly
submitted the questions as to the existence of a vein
and an apex to the jury as questions of fact to be deter-
mined by them; there was a substantial conflict and
that the authorities cited by plaintiff, Hyman v. Wheeler,
15 Mor. 519; Iron-Silver Min. Co. v. Cheesman, 116

U. S. 529, etc., do not sustain his contention when applied to the cause at bar.

The evidence in this cause is all to the effect that the shale cap or wall overlying the ground in dispute, eroded or broken in the Illinois, continuing in a semicircular form westward, onto the next claim, contains no mineral whatsoever.

The mineral occurs in the lime, and, as some witnesses testify, in a few places between the shale and lime, but not connected with the former.

We can recognize the definition of a vein as given by Judge Hallett in Hyman v. Wheeler, 15 Mor. 519, and still see that the jury in this cause might from the evidence have determined that here was a vast bed, lode, zone, or mass of mineral-bearing lime, with no foot wall and, in some localities, with no hanging wall or even cap,—in others covered with shale, the lime body extending throughout the Illinois, the Calamity, the Andy Johnson, Brush Heap, and locations west and south of the Illinois, as well as possibly other mines.

That this body or mass, zone, or lode of lime was broken or cut up into fissures, gashes, pockets, veins, etc., and these spaces filled with mineral, deposited by infiltration when the mass was covered with water before or after the shale was formed, or else by sublimation, or even by heat melting the mineral from rock containing it above; in fact, we might accept either of the theories advanced by geologists and mineralogists as to the formation of the rock or deposit of mineral, and there would yet be nothing to prevent our reconciling that theory with the verdict of the jury in this cause, that there was neither a vein nor an apex upon the Illinois mine, or at least such a vein as could be followed beyond the side lines of that claim.

There may be a contact, and yet no contact vein. The mineral may be exposed at a point upon one claim and followed continuously under the surface from this

point to another property, though an undisputed vein between clearly defined hanging and foot walls, and still the point at which the mineral is exposed not be the apex of the vein which may have an apex ten miles distant, or may have no apex at all.

It would be the height of foolishness for a court in New Mexico, with our mineral-bearing lime formation extending with the different mountain ranges from Colorado to Old Mexico, to say that mineral can not be found in lime at a thousand feet depth, or on the surface with a cap of slate or a contact of porphyry. One of these lime belts, zones, or masses may be mineral-bearing throughout its length and breadth, in one certain locality or in various places, and the body, mass, or zone bearing the mineral dip into the earth on all sides under mountains of granite with no apex to the vein or mass distinguishable to the naked eye, or discoverable by the ingenuity of the prospector. The zone or mass may follow the undulations of a broken country down into the valley and rising over the divides, cutting through, covered by or overlapping other formations, but until it is broken and the edges exposed or some edge or end as a beginning point found from which it can be followed down at some angle below the horizontal, there is no apex from which it can be followed beyond the side lines of a claim located upon it.

These questions were fairly and ably presented to the jury through the medium of the instructions evidently prepared with great care and reflecting great credit upon the trial judge, JOHN R. McFIE.

We can find no error in the instructions and none in the refusal to set the verdict aside.

We cite Hyman v. Wheeler, 15 Mor. 519; Iron-Silver Mining Co. v. Elg. Min. Co., 118 U. S. 196; Stephens v. Williams, 1 Mor. Min. Rep. 557; 1 Mor. 576, 554; 9 Mor. 587 to 590.

Judgment below affirmed.

SEEDS and FREEMAN, JJ., concur.

LEE, J. (dissenting).—This was an action of ejectment to recover possession of certain mining ground in the Black Range mining district, county of Sierra, in this territory, by parties holding the title to the Calamity claim against parties holding the title to the Illinois mining claim, which claims are adjoining each other. No dispute was made as to the title or right to possession of the surface ground of either claim. The defendant in the court below filed a special plea, in which it admitted the entering upon the lands of the plaintiff, but justified such entry by setting up substantially in the language of the United States mining laws that the entering by it upon the land of the plaintiff was made at a great depth below the surface of the earth, and was made while pursuing a "vein," "lode," or "ledge," of mineral-bearing rock, which had its apex within the lines of its mining claim, and which so far departed from the perpendicular in its course downward as to pass out of the side lines of its mining claim and to enter the lines of the Calamity claim, the property in dispute in this case.

The issue thus made by this plea was the one upon which the case was tried, the defendant assuming the burden of proof and relying upon the accepted proposition that the owner of a mining vein, covered by the superficial lines of his claim, may not only pursue that vein perpendicularly within those lines, but may, when the vein passes beyond the side lines of this claim or survey, pursue that vein outside of a line drawn vertically down from the superficial side lines, as far as the vein may extend. There does not appear to be any reversible error in the ruling of the court below, without it was in refusing to instruct the jury to find for the defendant, or in refusing to grant a new trial, which must depend upon the question whether the evidence supports the plea of the defendant; and this involves the construction that is to be given the words

"vein," "lode," or "ledge," as used in the United
States mining laws. The existence of the conditions
that are required to constitute a mineral "vein,"
"lode," or "ledge" as used in the acts of congress, is
a question of fact to be determined by the jury. But
after the existence of the facts in the case is established
by testimony, as to whether those facts thus proven
constitute a mineral "vein," "lode," or "ledge" under
the United States laws, is a question of law to be
determined by the court. This must necessarily be so,
as that which under the statutes in such cases consti-
tutes a "vein," "lode," or "ledge" constitutes title,
and as to what constitutes title is a question of law.
By the testimony of witnesses the existence or nonex-
istence of the facts is established, and then it is for the
court to determine whether the facts thus established
constitute title within the meaning of the acts of con-
gress as construed by the supreme court.

In the case of Iron-Silver Mining Company v.
Cheesman, 116 U. S. 534, that court says that, up to
that time, it had never given a clear definition of those
words, and, quoting from Judge FIELD's opinion in
the Eureka Case, 4 Sawyer, 302, says as follows:

"It is difficult to give any definition of this term
as understood and used in the acts of congress which
will not be subject to criticism. A fissure in the earth's
crust, an opening in its rocks and strata made by some
force of nature, in which the mineral is deposited,
would seem to be essential to a lode in the judgment
of geologists. But to the practical miner the fissure
and its walls are only of importance as indicating the
boundaries within which he may look for and reasona-
bly expect to find the ore he seeks. A continuous
body of mineralized rock lying within any other well
defined boundaries on the earth's surface and under it,
would equally constitute, in his eyes, a lode. We are
of opinion therefore, that the term as used in the acts

of congress is applicable to any zone or belt of mineral
rock lying within boundaries clearly separating it from
the neighboring rock.''

They also approve Judge HALLETT's definition in
Stevens v. Williams, 1 McCrary, 488, wherein he says:

''In general it may be said that a lode or vein is a
body of mineral or a mineral body of rock, within
defined boundaries, in the general mass of the moun-
tain.'' But finally adopted as its own the definition
given by the court in the case then under considera-
tion, in its charge to the jury, by saying:

We are not able to see how the judge who presided
at the trial of the case could have better discharged
this delicate task than he has in the charge before us
to which the exceptions are taken, and we give here
verbatim that part of it relating to this point. We
therefore may take the quotation as being the defini-
tion adopted by the court of last resort, upon the ques-
tion.

The quotation referred to is as follows:

''Upon the evidence before you these parties are to
be regarded as owning the surface of the land by them
respectively claimed, and all that rightly goes with the
surface under the law. No question is presented as to
the right of the plaintiff to the Lime location. Hold-
ing, by patent from the government, the plaintiff must
be regarded as the owner of that claim, and all lodes
and veins existing therein. The statute gives the
owner of a lode, the one who may locate it at the top
and apex, the right to follow it to any depth, although
it may enter the land adjoining. And if the Lime
location was made on a lode or vein which descends
from thence into the Smuggler location, the right of the
plaintiff to follow the lode into the Smuggler ground
and to take out ore therefrom can not be denied. Thus,
the principal question for your consideration is, whether
there is a lode or vein in the Lime location which ex-

tends from that claim into the Smuggler claim. If a
lode is found in that claim, all the evidence tends to
prove that the top and apex of such lode is in that claim.
There is no room for controversy on that point.   To de-
termine whether a vein or lode exists, it is necessary to
define those terms; and as to that it is enough to say that
a lode or vein is a body of mineral or mineral- bear-
ing rock, within defined boundaries in the general
mass of the mountain.   In this definition the elements
are the body of mineral-bearing rock and the bounda-
ries; with either of these things well established,
very slight evidence may be accepted as to the exist-
ence of the other.   A body of mineral or mineral-
bearing rock in the general mass of the mountain,
so far as it may continue unbroken and without
interruption, may be regarded as a lode, whatever
the boundaries may be.   In the existence of such
body and to the extent of it, boundaries are implied.
On the other hand, with well defined boundaries, very
slight evidence of ore within such boundaries will
prove the existence of a lode.   Such boundaries con-
stitute a fissure and if in such fissure ore is found,
although at considerable intervals and in small quan-
tities, it is called a lode or vein.   To maintain the
issue on its part the plaintiff must prove that a lode
so here defined extends from the Lime to, and into,
the Smuggler claim.

Reverting to that definition, if there is a contin-
uous body of mineral or mineral-bearing rock extend-
ing from one claim to the other, it must be that there
are boundaries to such body and the lode exists.   Or if
there is a continuous cavity or opening between dis-
similar rocks in which ore in some quantity and value
is found, the lode exists.   These propositions are cor-
relative and not very different in meaning, except that
the first gives prominence to the mineral body, and the
second to the boundaries.''

Therefore, in the consideration of this case, we are to give to the words "vein," "ledge" or "lode," as used by congress in the act upon which the defendant relies for his right to enter upon the land in question, the meaning as defined by the supreme court, and considering the act as thus defined, the entire evidence in the case clearly brings the defendant within the requirements and provisions of the act.

It is true that witnesses on the part of the plaintiff testified that there is no vein on the Illinois claim; but in answer to the question: "Why do you say there is no vein?" they answer: "Because there are no two walls there," and then proceed to testify to the exact state of facts, which, under the rulings of the supreme court, would bring it within the provisions of the act. To illustrate: A Mr. Cox, perhaps the strongest witness on the part of the plaintiff, testified as follows:

"Q. Now in your judgment, as a miner, to this jury, will you say whether or not the lime underneath is a wall? A. It is not a wall but a ledge, a mineral vein or a zone, and the Illinois mine is pitched on it."

"Q. Do you call it a wall to the contact then, leaving mineral vein out? A. Well, I suppose you would call it a wall."

"Q. Well then, is it your judgment that there are two walls on this contact? A. There is a lime and shale.

"Q. There are two walls; now what have you to say about mineral; did you ever see any mineral between those two walls? Witness: On the Illinois?

"Q. Yes, sir. A. I saw a little mineral in one place; the lime was twenty feet perpendicular here.

"Q. Now at that place where you saw the mineral between those two walls, would you call that a vein? A. No sir."

The assertions of witnesses that there was or was not a "vein," "ledge" or "lode," as claimed, are to be

considered only of such weight in evidence as their opinions are entitled to as experts, and when made in connection with their testifying as to the facts, they are subject to be strengthened or overthrown by them. When a witness gives his opinion and his reasons for it, and his reasons prove incorrect, his opinion necessarily becomes of no weight. This witness says that it was not a vein, because there were no two walls there, and on cross-examination he says: "It is a mineral ledge, a mineral vein or zone, and the Illinois is pitched on it." The first two words are the exact words used in the act of congress, and the other, "zone," has been interpreted into it by the supreme court, covering all the requirements to bring the mine in question under the provisions of the act. And thus the entire testimony in the case is uncontradicted to the effect that there is a continuous "vein," "ledge," "lode," "zone" or "belt" of mineral-bearing rock existing from one claim to another, and in such case the supreme court holds: "It must be that there are boundaries to such body and the lode exists."

It therefore follows that if the apex of such body of ore is on the claim of the party following and claiming the same, and if such "vein," "ledge," "lode," "zone," or "belt" extends downward vertically, so far departing from a perpendicular line as to pass the side lines of such claim, such departure is authorized by the act of congress, and the ore belongs to the party following it. "Or if there is a continuous cavity or opening between dissimilar rocks in which ore in some quantity and value is found, the lode exists."

It is admitted by all the evidence that in this case there is a contact between the shale and lime, rocks of a dissimilar character, and that in the contact mineral of value is found.

Therefore, according to the ruling of the supreme court as above laid down, the lode must exist.

There being no conflict in the evidence as to either of these propositions, I think the court should have instructed the jury to find for the defendant, or granted a motion for a new trial. And, therefore, I can not concur in the conclusion reached by the majority of the court.