[No. 1362.]

## JOHN E. JONES ET ALS., RESPONDENTS, v. THE PROSPECT MOUNTAIN TUNNEL COMPANY, APPELLANT.

TRESPASS—CONSTRUCTION OF PLEADINGS.—Where the complaint alleges that the plaintiffs are the owners and in possession of a mine, an answer which denies that they are the owners or in possession of a certain part of the mine, describing it, does not admit plaintiffs' ownership of that part. Nor do the facts that the answer also alleges that the defendant is the owner of that part of the mine, and that a certain ledge therein found apexes outside the plaintiffs' boundary lines, constitute such an admission.

MINING PATENTS—VEINS OR LEDGES NOT CONVEYED.—A patent from the United States for mining ground does not convey to the patentee the veins or ledges which apex outside the boundary lines of the mine, extended downward vertically, and the mine owner is not necessarily the owner of such veins.

MINING CLAIM—EXTENT OF OWNERSHIP—BURDEN OF PROOF.—The presumption, in the first instance, is that the owner of the mine owns all the veins found within his boundary lines, but when there is evidence tending to prove that the vein in controversy apexes outside those lines, this, if sufficient, will rebut that presumption; and as the burden of proving ownership is, when denied, always upon the party alleging it, he must also meet and overcome this evidence, or he will fail in establishing his title.

STATUTORY CONSTRUCTION—ROCK IN PLACE.—By "rock in place," as used in the mining statutes, is meant rock that is enclosed and embraced in the general mass of the mountain, as distinguished from the float, soil and debris of the surface; and it is not material where the rock or mineral was originally formed or deposited, or that the vein matter is loose, or broken, or disintegrated.

TITLE BY ADVERSE POSSESSION—EVIDENCE.—Where a defendant pleads title by virtue of adverse possession of a mine, evidence which tends to prove that such possession has been under a claim of ownership, and in hostility to the true owner, is admissible. (Syllabus by BIGELOW, J.)

APPEAL from the District Court of the State of Nevada, Eureka county.

*G. F. Talbot*, District Judge.

The facts fully appear in the following statement by the justice delivering the opinion.

Action brought to recover fifty thousand dollars damages, as the value of one thousand tons of ore unlawfully extracted from the Colorado mine, and for an injunction restraining defendant from entering upon or further extracting any ore therefrom. The complaint alleged the plaintiffs' ownership and possession,

the defendant's trespass, and set up facts looking to equitable relief. The material parts of the answer are as follows: The defendant "denies that at the time mentioned in said complaint or at any other time, it wrongfully or unlawfully entered into or upon the mining claim described in the plaintiffs' complaint, or that at said time or at any other time it excavated or removed from said mining claim any ore or mineral-bearing rock, or that at said time or at any other time it converted any ore or mineral-bearing rock excavated or removed from said mining claim to its own use; or that the ore plaintiffs allege defendant excavated and removed from said mining claim was of any value whatever, or that plaintiffs have been damaged by the entry into or upon said mining claim by defendant, or by the excavation or removal of any ore therefrom, or by the conversion of any ore excavated or removed therefrom by the defendant, in any sum whatever.

And for a further defense defendant admits that plaintiffs are the owners of all that portion of the Colorado mining claim described in their complaint except that portion hereinafter described. And for a further defense defendant alleges that on the ——— day of ———, 1875, it was the owner of, in the possession of and entitled to the possession of a certain tunnel situated upon the public mineral lands of the United States, on and under the western slope of Prospect mountain, in Eureka mining district, Eureka county and state of Nevada, run for the purpose of developing veins and lodes of rock bearing valuable mineral and for the discovery of mines, and to fifteen hundred linear feet of all veins or lodes within three thousand feet from the face of said tunnel, discovered in said tunnel, on the line thereof, not discovered previously to the commencement of said tunnel, on the ——— day of ———, 1875, and said defendant ever since said date has been, and now is, the owner of, in the possession of and entitled to the possession of said tunnel, and of all the veins and lodes discovered within three thousand feet of the face of said tunnel, discovered in said tunnel not discovered previously to the commencement of said tunnel to the extent of fifteen hundred feet; that said tunnel in its course enters into and under and crosses the said Colorado mining claim, and one of said veins or lodes, discovered in said tunnel on the line thereof, about eighteen hundred and fifty feet from the face thereof, having its top or apex outside of the exterior

limits of said Colorado mining claim on its course downwards, dips under and through said Colorado mining claim, and certain excavations made upon said vein or lode last above described are under and within the surface limits of said Colorado mining claim, extended downward vertically.

And defendant denies that plaintiffs are the owners of or in the possession of, or entitled to the possession of said tunnel, or any portion thereof or of said vein, or any portion thereof or of the excavations thereon, or of any portion thereof." The answer then sets up five years " quiet, peacable, actual and exclusive possession of all of said tunnel and of said vein or lode and of the excavations thereon above described," by the defendant, and follows with denials of the equitable cause of action.

The evidence shows that the Colorado had been worked downward from the surface a distance of about one hundred and sixty-six feet. The ledge in controversy was struck in defendant's tunnel nine hundred feet below the surface and had been worked upward a distance of three hundred and ninety-four feet. The two workings were separated by between three hundred and four hundred feet of unexplored ground.

At the plaintiffs' request, the court gave the following instructions: " No. 2.   It is admitted by the pleadings that the plaintiffs were, when the alleged wrongs were committed, and now are, the owners in fee and in possession of the Colorado mine. It is also admitted that the defendant entered beneath the surface of said Colorado mine, and extracted ore from a lode and converted the ore to its use, which lode at the point of entry is within the boundary lines of said Colorado mine, extended vertically downwards. These admissions are conclusively upon the defendant." "No.   4.   A vein, lode, ledge or deposit within the meaning of the law, is a crack, cavity or fissure in the earth crust, filled with rock in place, bearing gold, silver or other valuable mineral. The mineral or rock containing the mineral must be in place; that is to say, in the place where it was originally formed or deposited. Loose, broken rock, or wash, sand or gravel, float or soil is not sufficient; the rock containing the mineral must be in place between walls or defined boundaries. The rock must also contain valuable mineral." "No. 9.   *   *   *   You are instructed that under the admission and averments of defendant, the burden of proof rests upon the

Prospect Mountain Tunnel Company to prove to you that the lode or deposit so admitted to be within the limits of the Colorado mine has its top or apex outside of the exterior lines of the Colorado mine extended vertically downward."

Defendant's instruction No. 3, refused, was as follows:   "The court instructs the jury that in order to entitle plaintiffs to recover they must show by a preponderance of evidence that they were the owners of the lode, vein or ore body out of which the ore in controversy was taken at the time it was taken, and to do this it was necessary for them to establish by a preponderance of evidence that the top or apex of said lode was within the exterior limits of the Colorado mining claim, extended downward vertically; and if they have failed to do this the jury should find a verdict in favor of the defendant, the Prospect Mountain Tunnel Company."

The jury found a verdict in favor of the plaintiffs for five thousand dollars, for which amount judgment was entered in their favor, and an injunction granted restraining the defendant from entering upon the Colorado. The injunction was subsequently modified so as to exclude the tunnel from its operation.

*Thomas Wren*, for Appellant.

I.   The admissions of counsel for respondents, and the testimony, shows that the adverse possession of that portion of the lode out of which the ore came had been as open, notorious, and continuous as the adverse possession of the tunnel.

II.   The evidence is insufficient to support the verdict.   It is admitted that the lode disclosed in the workings from the Prospect Mountain Tunnel extends upward from the lower workings to the foot of raise nine.   Taking that for granted, all of the testimony, both for respondents and appellant, shows that the top or apex of all that portion of the lode out of which the ore came lies east of the east line of the Colorado.   (Evidence reviewed.)

III.   The title of the respondents to the lode and the quantity of ore taken out and its value having been denied by appellant, it was incumbent upon the respondents to establish by a preponderance of testimony that they owned the lode or that portion of it out of which the ore was taken, the quantity that was taken out of that portion and its value.

IV.   The evidence of the plaintiffs' own witnesses shows that the apex of that portion of the lode out of which the ore came lies east of the east line of the Colorado.   The plaintiffs' own maps show that the general inclination of the lode is eastward.

V.   The court erred in excluding the notice of the location of the Prospect Mountain Tunnel.   The notice tended to show, in connection with the other evidence offered, that the defendants were acting in good faith in extracting the ore under appellant's claim and color of title to the lode out of which the ore was taken.

VI.   The court erred in striking out the testimony of Wren. It tended to show the good faith of the appellant.

VII.   The court erred in instructing the jury that "it is admitted by the pleadings that the plaintiffs were, when the alleged wrongs were committed, and now are, the owners in fee and in possession of the Colorado mine."   The pleadings do not admit that the plaintiffs, when the alleged wrongs were committed, were or now are the owners of the Colorado mine. Appellant's answer explicitly denies that the plaintiff at such time, or now are the owners of or in the possession of that part of the Colorado embraced by the tunnel, or of the lode out of which the ore came, or the excavations thereon.

VIII.   The court erred in instructing the jury in effect that the plaintiffs are the owners of the Colorado mine.   This was equivalent to an instruction that the plaintiffs owned the tunnel, and entirely ignored the plea of the statute of limitations in regard to the ownership of the lode and the excavations thereon.

IX.   The court erred in instructing the jury that: "A vein, lode, ledge or deposit within the meaning of the law, is a crack, cavity, or fissure in the earth's crust filled with rock in place, bearing gold, silver and other valuable mineral; the mineral or rock containing the mineral, must be in place; that is to say, in the place where it was originally formed or deposited.   Loose, broken rock, or wash, sand or gravel, float or soil, is not sufficient.   The rock containing the mineral must be in place between walls or defined boundaries.   The rock must also contain valuable mineral."   The instruction is entirely too narrow. The error in the instruction is in the attempt made to define what is meant by rock in place in the United States statutes, and in the statement that "loose, broken rock, or wash, sand or gravel, float or soil, is not sufficient."   The accepted and

universal theory in regard to the formation of lodes like the one in controversy is that the crack, cavity or fissure, is first formed by natural forces and subsequently filled with the mineral matter that constitutes the lode.

X. The court erred in instructing the jury that under the admission and averment of defendant the burden of proof rests upon the tunnel company to prove that the lode or deposit so admitted to be within the limits of the Colorado mine has its apex outside of the exterior lines of the Colorado mine, extended downward vertically. If appellant had admitted in its answer that the ore had all been taken from within the limits of the Colorado, the instruction might possibly have been correct. But the answer of appellant denies that appellant ever entered into or upon the Colorado or any portion thereof and broke down, excavated or removed from the said mining claim or any portion thereof any mineral-bearing rock or ore. This cast the burden of proof upon the plaintiff to show that defendant had extracted and removed ore from the Colorado.

*Robert M. Clarke* and *R. M. Beatty*, for Respondent.

I. The verdict being a general verdict, it covers every issue in the case, and being for respondents, finds every material fact in respondent's favor. The ownership of the vein from which the ore was extracted was a material issue. The jury, therefore, found upon this issue in favor of respondents, and that the vein from which the ores were extracted was respondents' vein. Since the vein is respondents' it is not material where it apexed.

II. It is of no consequence that appellant " entered into and passed through the Colorado mining claim more than ten years prior to the commencement of this action and has been in the actual and exclusive possession of said tunnel, using the same across and through said Colorado mining claim, during all of said period, and said defendant made the excavations from said tunnel within the vertical side lines of said Colorado mining claim, extended downward vertically, except those made by said defendants, Kitchen and Dunkle, more than five years prior to the commencement of this action." These facts, if true, would not constitute appellant the owner of the Colorado mine, or vein, or any part thereof, nor would they justify or excuse the wrongs and trespasses complained of.

III. The evidence is ample to sustain the verdict. It is ad-

mitted by the pleadings that the vein and excavations from which the ore came " are under and within the surface limits of said Colorado mining claim extended downward vertically." The proof without contradiction shows that the workings from which the ore came are all upon one and the same vein.

IV. There is positively nothing to support the claim that the verdict is excessive. Appellant's secretary testified that there was shipped during the time laid in the complaint four hundred and ninety-five tons of ore, for which appellant received thirteen thousand nine hundred and eighty-five dollars. Of this amount apellant received its royalty and its lessees the balance.

V. The court did not err in refusing to admit the notice of location of the Prospect Mountain Tunnel. Appellant's owner-ship of the tunnel was not involved, indeed it was distinctly ad-mitted. The notice, as a tunnel site location, was incurably bad, and conferred no lode rights. No tunnel site notice of location could vest in appellant the right to run its tunnel into respondent's patented ground, or give appellant the right to mine upon veins found therein. (Laws U. S. Sec. 2323; Wade's Am. Mining Law, 15.) A tunnel location creates no right in the vein discovered, except the right to locate the vein included in a piece of public mineral land. The vein when discovered must be located and the location must be made under and in conformity with the mining laws, national, state and local. (Wade's Am. Mining Laws, 68; *Corning Tunnel Co.* v. *Pell* 4 Colo. 507; Wade's Am. Mining Laws, 151-152; Laws U. S. Secs. 2323, 2325, 2320, 2324; Copp's Mineral Lands, 2d ed. 35, 36, 90, 220, 221, 231, 232; Sickels' Mining Laws, 24; Weeks' Mineral Lands, 417, 418; *Hope Mg. Co.* v. *Brown*, 28 Pac. Rep. 732.)

VI. No testimony given by Wren supporting the good faith of appellant was stricken out. On the contrary, all evidence offered and tending to prove defendant's good faith was ad-mitted.

VII. The definition given of a vein by the court in its in-struction is correct, viewed either from a scientific or legal standpoint.

By the Court, BIGELOW, J. (after stating the facts as above):

One of the leading questions involved in this case is whether

the answer admits the plaintiffs' ownership of the Colorado mining claim. In their complaint the plaintiffs allege that they are the owners and in the possession of that certain mine and mining location and premises known as and called the Colorado mine. This the evidence shows to be a parallelogram one thousand feet in length by two hundred feet in width, and we shall construe the complaint as amounting to an allegation that they also own all beneath the surface of such parallelogram, as the same may be extended downward indefinitely.

In answer to this the defendant admits the plaintiffs' ownership of the Colorado mining claim as described in the complaint, "except that portion hereinafter described." It then alleges that the defendant is the owner of a certain tunnel, and "that said tunnel in its course enters into and under and crosses the said Colorado mining claim, and one of said veins or lodes discovered in said tunnel, on the line thereof, about one thousand eight hundred and fifty feet from the face thereof, having its top or apex outside of the exterior limits of said Colorado mining claim, on its course downwards dips under and through said Colorado mining claim, and certain excavations made upon said vein or lode last described are under and within the surface limits of said Colorado mining claim extended downward vertically. And defendant denis that plaintiffs are the owners of, or in the possession of, or entitled to the possession of said tunnel, or any portion thereof, or of said vein, or any portion thereof, or of the excavations thereon, or of any portion thereof." The defendant then attempts to plead ownership of the portion above described, by virtue of five years' peaceable adverse possession.

That this is a square and explicit denial of the plaintiffs' ownership of the portion of the Colorado referred to is too clear for argument or question. If it is not, it may be safely said that no language can be used that will constitute a denial of the ownership of a portion of a mine, while at the same time admitting ownership of some other portion. It seems to us that the only way in which a contrary construction can be placed upon the answer is by absolutely shutting one's eyes to the language above quoted, and therefore we shall not pursue it further.

It may be remarked, too, that at the opening of the trial the plaintiffs did not see fit to rely upon what they now claim to

have been the very serious admission of the answer, but intro-
duced evidence to establish their title a proceeding altogether
unnecessary if title was admitted—and whereby the plaintiffs
waived all objection to the sufficiency of the denials. (*Tynan* v.
*Walker*, 35 Cal. 645.) Under these circumstances, it was error
for the court to instruct the jury, as it did repeatedly both in
the plaintiffs' instructions and its own, that the plaintiffs'
ownership of the Colorado was admitted.

It is argued, however, that the proofs established the plaint-
iffs' ownership of the Colorado; that this ownership was not
contested upon the trial, and that consequently the error, if
such it were, was harmless to the defendant. At the opening of
the trial the plaintiffs introduced in evidence a patent from the
United States for the Colorado mine, which was in no manner
attacked by the defendant, and it is claimed that this so indu-
bitably established the plaintiffs' title as to be equivalent to an
admission of ownership in the pleadings. To properly under-
stand this contention it is necessary to add that the plaintiffs'
theory of the issues in the case, which seems to have been adopted
by the court below, is that the answer had admitted the plaint-
iffs' ownership of the Colorado, but set up an independent fact,
to wit: that the ledge in controversy apexed outside of the
plaintiffs' ground, which, if established, would rebut the
effects of that admission and constitute a defense; but that as
to this fact the burden of proof was upon the defendant. Hav-
ing concluded that the basis of this theory—the supposed admis-
sion—is untrue, we shall not pause to consider it further than
to determine whether the proof of a patent to the mine would
throw upon the defendant the burden of proving that the ledge
in controversy apexed outside the boundaries of the patented
ground, which the court instructed the jury was the effect of
the supposed admission. If it would not, then, even to this
extent, it was not equivalent to such an admission.

A patent for a mining claim is quite a different thing from a
patent for agricultural land. The latter conveys the surface of
the ground and all that lies beneath it. (*Amador Medean Gold
Min. Co.* v. *South Spring Hill Gold Min. Co.*, 13 Sawy 523.)
The former does not necessarily do so. The patent in this case,
which seems to be drawn in accordance with the statutes,
expressly provides that it is "subject nevertheless to the fol-
lowing conditions and stipulations: *First*, that the grant hereby

made is restricted to the land hereinbefore described as Lot No. 79, with one thousand linear feet of the Colorado mine, vein, lode, ledge or deposit, for the length aforesaid throughout its entire depth as aforesaid, together with all other veins, lodes, ledges or deposits throughout their entire depth as aforesaid, the tops or apexes of which lie inside the exterior lines of said survey." It follows that ledges which apex outside the boundaries of the land conveyed do not belong to the patentees. (*Montana Co.* v. *Clark*, 42 Fed. Rep. 626; *Mining Co.* v. *Cheesman*, 116 U. S. 5'3; *Reynolds* v. *Mining Co.*, 116 U. S. 687; *Iron Silver Min. Co.* v. *Mike & Starr Gold & Silver Min. Co.* 143 U. S. 394.)

Doubtless, the production of a patent to the ground in which the ledge is found makes out a *prima facie* case for the plaintiffs; that is, in the absence of any evidence tending to prove that the ledge apexes outside of the exterior lines of the plaintiffs' patented ground, it would be presumed to apex inside those lines. (*Mining Co.* v. *Campbell*, 17 Colo. 207; *Cheesman* v. *Shreve*, 37 Fed. Rep. 36.) But when evidence is produced tending to show that the ledge apexes outside those lines, this simply tends to prove that the plaintiffs, notwithstanding their patent, do not own that ledge, and they must now meet this evidence and overcome it, or they will fail in establishing their title. As the plaintiffs' ownership is denied, the burden of proving it is all along upon them. If the ownership depends upon whether the ledge apexes inside the exterior lines of the mine, then this fact, the same as any other fact upon which title depends, must be established by the party asserting it. The plaintiffs must recover upon the strength of their own title; if they do not own the ledge from which the ore was extracted, it matters not who does own it. (*Reynolds* v. *Mining Co., supra.*) Evidence showing that the ledge apexes outside the plaintiffs' ground is not offered to establish a fact by way of confession and avoidance of the plaintiffs' case, as to which the burden would be upon the defendant, but to show that they never had any case, because they never owned that ledge. The burden of showing ownership being placed by the pleadings upon the plaintiffs, it never shifts to the defendant, except in the limited sense already spoken of. This is a universal rule, applicable to all cases and one that is supported by both reason and the great weight of authority. The distinction

between the two burdens is clearly pointed out in *Scott* v. *Wood,* where it is said: "The term 'burden of proof' is used in different senses. Sometimes it is used to signify the burden of making or meeting a *prima facie* case, and sometimes the burden of producing a preponderance of evidence.  \* \* \* The two burdens are distinct things. One may shift back and forth with the ebb and flow of the testimony. The other remains with the party upon whom it is cast by the pleadings, that is to say, with the party who has the affirmative of the issue." (81 Cal. 398, 400.)

In *Heinemann* v. *Heard,* the court of appeals of New York said: "During the progress of a trial it often happens that a party gives evidence tending to establish his allegation, sufficient it may be to establish it *prima facie,* and it is sometimes said the burden of proof is then shifted. All that is meant by this is, that there is a necessity of evidence to answer the *prima facie* case, or it will prevail, but the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue, and this burden remains throughout the trial." (62 N. Y. 448, 455.)

In *Heilman* v. *Lazarus,* it was again said: "The issue as to which the burden of proof was on the plaintiff was that of title, of right of possession of the land, and that burden remained with him to the end." (90 N. Y. 672, 673.)

In *Clark* v. *Hills,* an instructive case, the court uses this language: "Much less does the fact that a defendant is forced to maintain the affirmative of some fact, in disproving the plaintiffs' case, shift upon him the burden of proof. Hence the onus probandi in this case was not affected by the fact that, in showing the land to have been vacant at the date of the plaintiffs' location, he had to prove that it was not within the lines of the Ponce grant, and that the defendant met the issue by proof that it was embraced within the lines of that grant. That a party does not shift to his adversary the burden of proof by making out a *prima facie* case is clear from what we have said, and is a well settled principle. His case must be disproved; but when proof having this tendency is produced, it then becomes a question whether upon the whole evidence the *prima facie* case has been successfully met by the adverse party. If it appears that the preponderance of testimony is not in favor of the party having the onus, the verdict should be against him.

If the testimony is evenly balanced, he has failed to establish the issue, but has left it doubtful whether he has sustained it or not, and that doubt must inure to the benefit of his adversary." (67 Tex. 141, 149.) And so are other cases. (*Lamb* v. *Railroad Co.*, 46 N. Y. 271; *Blunt* v. *Barrett*, 124 N. Y. 119; *Claflin* v. *Meyer*, 75 N. Y. 260; *Willett* v. *Rich*, 142 Mass. 357; *Nichols* v. *Munsel*, 115 Mass. 567; *Wilder* v. *Cowles*, 100 Mass. 490; *Tarbox* v. *Steamboat Co.*, 50 Me. 345; *Small* v. *Clewley*, 62 Me. 157; *Insurance Co.* v. *Schwing*, 87 Ky. 410; *Powers* v. *Russell*, 13 Pick. 76; *Shepardson* v. *Perkins*, 60 N. H. 77; *Blodgett* v. *Cummings*, Id. 116; *Wall* v. *Hill's Heirs*, 1 B. Mon. 290; *Atkinson* v. *Transportation Co.*, 69 Wis. 5; *Bank* v. *Seymour*, 64 Mich. 72; *Bank* v. *Doyle*, 9 R. I. 78; *Blanchard* v. *Young*, 11 Cush. 345.)

We have been cited to the case of *Bell* v. *Skillicorn*, 28 Pac. Rep. 768, as sustaining a contrary view; but with all due respect to the court rendering that decision, we must decline to follow it. It is in conflict with the almost unanimous conclusions of other courts, and in our judgment is not supported by any of the authorities there cited, except the case of *Cheesman* v. *Hart*, 42 Fed. Rep. 98, decided by a single judge. If we were permitted to make the suggestion, we would say that the error in *Bell* v. *Skillicorn* arises from assuming that the issue in the case was upon the defendant's ownership, whereas, as we have endeavored to show, it is entirely immaterial whether the defendant has any title whatever if the ledge does not belong to the plaintiff; and that it does not belong to him, unless it apexes inside his boundaries.

We are therefore of the opinion that the instructions that the defendant had admitted the plaintiff's title to the Colorado were not only erroneous but prejudicial to the defense.

It follows also, from what has been said, that the ruling that the burden of proving that the ledge apexed outside of the plaintiffs' boundaries was upon the defendant was also error. As here used, the phrase "burden of proof" meant the preponderance of the evidence and must have been so understood by the jury, and in that sense it was erroneous. Upon this point defendant's instruction No. 3 stated the law correctly, and should have been given.

The jury were also instructed that the answer admitted that the ore extracted and in question, had been taken by the defendant from a lode which at the point of entry was within the

exterior lines of the Colorado. It is perhaps sufficient to say that the answer contains no admission that the defendant had extracted or taken ore from any place whatever, nor that the "point of entry" to the lode, whatever that may mean, was within the plaintiffs' boundaries.

We are also of the opinion that the definition of what constitutes a lode was erroneous, and while in many cases the error might be harmless, it was, under the circumstances existing here, prejudicial to the defendant. A certain formation, which the defendant claimed to be the ledge, had been traced upward, outside the plaintiffs' boundaries, and a large amount of work there done upon it. If this was the ledge, as the defendant claimed, it tended to show that its apex was outside those boundaries. According to the witnesses, it consisted of broken limestone, boulders, low-grade ore, gravel and sand, which appeared to have been subjected to the action of water. This was found at a depth of several hundred feet, and where there seems to have been no question that it was within the original and unbroken mass of the mountain. So far as was shown, the rock on either side was fixed, solid and immovable. Mineral matter so situated, no matter where it was originally formed or deposited, is "in place" within the meaning of the law. The manner in which mineral was deposited in the places where it is found is, at the best, but little more than a matter of mere speculation, and to attempt to draw a distinction based upon the mode or manner or time of its deposit would be utterly impracticable and useless. The question was long ago settled by the courts. In *Stevens* v. *Williams*, 1 Morr. Min. R. 557, Hallett, J., said: "And, when this act speaks of veins or lodes in place, it means such as lie in a fixed position in the general mass of country rock, or in the general mass of the mountain. As distinguished from the country rock, this superficial deposit may have been brought into its present position by the elements; may have been washed down from above, or may have come there as aluvium or diluvium, from a considerable distance. Now whenever we find a vein or lode in this general mass of country rock, we may be permitted to say that it is in place, as distinguished from the superficial deposit, and that is true whatever the character of the deposit may be. * * * It is in place if it is held in the embrace, is inclosed by the general mass of the country."

Upon the second trial of the same case (Id. 569), Justice Miller said: "And there I want to say that by rock in place I do not mean merely hard rock, merely quartz rock, but any combination of rock, broken up, mixed up with minerals and other things, is rock, within the meaning of the statute." And again, in *Mining Co.* v. *Cheesman*, 116 U. S. 529, 537, the court said: "Excluding the waste, slide or debris on the surface of the mountain, all things in the mass of the mountain are in place." (See also, the same case in the circuit court, 2 McCrary, 191; *Hyman* v. *Wheeler*, 29 Fed. Rep. 353; *Cheesman* v. *Shreeve*, 40 Fed. Rep. 787.)

Other errors have been assigned upon the instructions, and in some respects they are open to the criticisms, but as they are concerning matters that will, in the light of this decision, be readily perceived and corrected upon another trial, we do not notice them further.

The ruling striking out Mr. Wren's testimony seems to have been correct, but the notice of the tunnel location was admissible in evidence for one purpose, at least. The defendant claimed ownership of the tunnel by virtue of adverse possession. Possession alone for the term of the statute is not sufficient to divest the title of the true owner; it must be possession under claim of a title in hostility to that owner. (*McDonald.* v. *Fox*, 20 Nev. 364.) This claim of exclusive and hostile ownership the notice tended to establish, without regard to whether it was sufficient under the mining statute, and it should therefore have been admitted.

Judgment and order refusing a new trial reversed, and cause remanded.