SAN FRANCISCO CHEMICAL CO. v. DUFFIELD et al.    (two cases).

(Circuit Court of Appeals, Eighth Circuit.   November 21, 1912.)

Nos. 3,772, 3,773.

1. MINES AND MINERALS (§ 38*)—CONFLICTING LOCATIONS—PLACER AND LODE
   CLAIMS—PRIORITY—DETERMINATION—NATURE OF ACTION.
      Where complainants located certain lode claims within the boundaries of
   prior located placer claims, actions to determine the conflicting rights of
   the claimants were properly instituted in the form of actions to determine
   adverse claims, authorized by Rev. St. §§ 2325, 2326 (U. S. Comp. St. 1901.
   pp. 1429, 1430).
      . [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§
   87½–113 ;  Dec. Dig. § 38.*]

2. MINES AND MINERALS (§ 38*)—CONFLICTING LOCATIONS—NATURE OF GROUND
   —DETERMINATION—JURISDICTION.
      Where complainants located certain lode claims within the limits of
   prior located placer claims, and thereafter instituted actions to determine
   their adverse claims to such locations, the determination of the question
   whether the ground was subject to location as placer or lode was not
   within the exclusive jurisdiction of the Land Department, but was de-
   terminable by the court in such actions.
      [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–
   113 ;  Dec. Dig. § 38.*
      Extent and boundaries of mining claims or locations, see note to Jones
   v. Wild Goose Mining & Trading Co., 101 C. C. A. 355.]

3. MINES AND MINERALS (§ 27*)—MINING CLAIM—LOCATION—ENTRY.
      While a valid claim to unappropriated mining ground cannot be insti-
   tuted while it is in the possession of another, who has the right to its
   possession under an earlier lawful location, nor can such a claim be in-
   itiated by forcible or fraudulent entry on land in possession of one who
   has no right either to the possession or to the title, yet every competent
   locator has the right to initiate a lawful claim to unappropriated ground
   by a peaceable adverse entry upon it while it is in the possession of those
   who have no superior right to acquire the title or to hold possession.
      [Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 64,
   65 ;  Dec. Dig. § 27.*]

4. MINES AND MINERALS (§ 16*)—NATURE OF LOCATION—"VEIN" OR "LODE"—
   "PLACER."
      Rev. St. § 2320 (U. S. Comp. St. 1901, p. 1424), provides for the location
   of mining claims on veins or lodes of quartz or other rock in place, bearing
   gold, silver, cinnabar, lead, tin, copper, or other valuable deposits.   Sec-
   tion 2329 (U. S. Comp. St. 1901, p. 1432) provides for the location of
   "placers," including all forms of deposit excepting veins of quartz or other
   rock in place.   Held that, since the term "vein or lode" is not used in a
   geological sense, but rather to mean a continuous body of mineralized
   rock lying within any other well-defined boundaries on the earth's surface
   and under it, which boundaries clearly separate it from the neighboring
   rock, and the term "placer" denotes ground within defined boundaries which
   contains mineral in its earth, sand, or gravel, not fixed in
   rock, but which may be collected by washing or amalgamation without
   milling, ground containing a bed of calcium phosphate or phosphate rock
   lying in horizontal veins of various thicknesses, from a few inches to five
   or six feet, having a dip and strike, and firmly fixed in the mass of the
   mountain between strata of limestone, chert, and shale, is subject to lo-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

cation only as containing a "lode" or "vein," and not as a "placer" location.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 21–23; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 6, pp. 5395, 5396; vol. 8, pp. 7286, 7287; vol. 5, pp. 4223–4226.]

Appeal from the District Court of the United States for the District of Wyoming; John A. Riner, Judge.

Actions by Morse S. Duffield and another against the San Francisco Chemical Company. Judgment for plaintiffs, and defendant appeals. Affirmed.

Jesse R. S. Budge, of Pocatello, Idaho (Clark & Budge, of Pocatello, Idaho, on the brief), for appellant.

Charles C. Dey, of Salt Lake City, Utah (C. B. Jack and A. L. Hoppaugh, both of Salt Lake City, Utah, on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and WM. H. MUNGER, District Judge.

WM. H. MUNGER, District Judge. While the two cases relate to different mining claims, they were both tried together upon the same testimony, were both submitted to this court upon the same argument and briefs, and the material facts applicable to one are applicable to the other.

It appears that appellant's predecessors, on or about August 24, 1905, located upon the public lands of the United States, in Uinta county, state of Wyoming, what is designated and known as the Raymond placer mining claim, and on or about September 5, 1905, located upon the public lands within said county what is designated and known as the Francis placer mining claim; that appellant, and its predecessors, with respect to each claim, performed the requisite discovery work, duly marked the boundaries of their placer mining location in due form, posted and recorded notice of location, and performed the requisite work required to be performed during each calendar year, subsequent to the location thereof, and made proof in due form that said work had been done and the same duly recorded; that on or about November 18, 1907, appellees made discovery and located in due form within the limits of said Raymond claim certain lode mining claims, designated and known as the China and Japan claims, and on or about November 18, 1907, they located within the limits of said Francis claim a certain lode claim known as the Fryerson claim. With respect to each of said lode claims they performed all the requirements of law in respect to posting notices and monuments of discovery, preliminary work required by law, and performed the amount of development work annually required by law, and the proofs thereof were duly recorded.

On September 22, 1910, appellant made application to the United States land office at Evanston, Wyo., for a final patent to each of its

placer claims, viz., the Raymond and Francis. Within 60 days thereafter, to wit, November 18, 1910, appellees filed in said land office their adverse claim to each of said claims of appellant, and within 30 days thereafter, to wit, on December 2, 1910, they commenced in the United States Court for the District of Wyoming their two several actions, one to determine the possessory right as between appellant and appellees to the lands covered by the China and Japan lode claims, and the other to determine the possessory right as to the land covered by the Fryerson claim. Issues were joined, cases tried, and decrees rendered in each case for appellees. From those decrees these appeals are prosecuted.

While there are a number of assignments of error, counsel for appellant have correctly grouped them so as to present four propositions:

First. That, by the stipulation of the parties, appellant's location was prior to that of appellees, and that, as appellant performed all the things required by the acts of Congress relating thereto to entitle it to a patent, the decision should be in favor of appellant. The question of the form of the location (that is, whether placer or lode) is one to be determined by the Land Department of the United States, and not for the court.

Second. That appellees, in making their lode locations, were trespassers, and as such acquired no rights thereunder.

Third. That, if the court should assume to determine which form of location (placer or lode) was proper and effectual to initiate a possessory title to the premises in controversy, under the law and the evidence the mineral deposit was properly located as placer, and not as lode.

Fourth. That the evidence as a whole shows that the decree should have been for appellant.

The last proposition, to wit, that the decree should have been for appellant, is necessarily dependent upon a determination of the first three propositions. The provisions of the statute upon which the suits are based, are contained in chapter 6, title 32, of the Revised Statutes of the United States (U. S. Comp. St. 1901, pp. 1422–1442).

Section 2325 provides for the obtaining of a patent to land claimed and located for valuable deposits, by any person, association, or corporation, authorized to locate a mining claim under that chapter, who has complied with the terms of the chapter, and files in the proper land office an application for patent, under oath, showing compliance with the law, and shall give the notice, by publication or otherwise, required of such applicant. If no adverse claim is filed within 60 days after publication of the notice, the applicant shall be entitled to a patent upon payment of the required amount.

By section 2326 it is provided that, where an adverse claim is filed during the publication, it shall be upon oath of the person or persons making the same, showing the nature, boundaries and extent of the adverse claim, etc., and such application for a patent shall be stayed until the controversy shall be settled by a court of competent jurisdiction. The section also provides:

"It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence proceedings in a court of competent jurisdiction, to determine the question of the right of possession and prosecute the same with reasonable diligence to final judgment, and a failure so to do shall be a waiver of his adverse claim. After such judgment shall have been rendered, the party entitled to the possession of the claim, or any portion thereof, may, without giving further notice, file a certified copy of the judgment roll with the register of the land office, together with the certificate of the surveyor general, that the requisite amount of labor has been expended or improvements made thereon, and the description required in other cases, and shall pay to the receiver five dollars per acre for his claim, together with the proper fees, whereupon the whole proceeding, and the judgment roll, shall be certified by the register to the Commissioner of the General Land Office, and a patent shall issue thereon for the claim or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess."

[1] These actions were properly brought under the statute, to determine the possessory right as between appellant and appellees of the tract of land in controversy. It is true that the decree of the court determines simply as between the litigants which one has the superior right to the possession of the premises in dispute. The title to the land being in the government, the decree of the court does not affect the title, excepting in so far as the judgment of the court may be binding upon or influence the Land Department of the United States. It must be conceded that, if appellant's placer claims were valid, being prior in time to appellees', appellant is entitled to decrees giving it the right to the possession. If, however, appellant's placer claims are void and appellees' claims valid, appellees' right to possession, as between them, would be unquestioned. There being no controversy in this case that appellant and its predecessors complied with the law in all respects, the only question affecting the validity of its claims is whether or not the mineral deposit in the land was of a character which permitted it to be acquired under placer mining locations. If the mineral was not of a character which could be located under the placer mining law, then, clearly, appellant's claims were invalid. But, as stated, appellant's contention is that that is a question for the sole determination of the Land Department, and not for the court in an action of this character. In other words, that the court, in these actions, can only inquire as to the priority of location, whether all the requirements of the act of Congress, to entitle appellant to a patent, have been complied with, and upon such findings being in favor of appellant, decrees in its favor should necessarily be rendered without inquiry as to whether or not the lands covered by appellant's claims were subject to location as placer.

The case of Webb v. American Asphaltum Co., 157 Fed. 203, 84 C. C. A. 651, involved the same question as is presented in the cases under consideration. The court said:

"May the right to the possession and to the title to a vein or lode of asphaltum in rock in place be secured by the location of a placer claim upon the land in which it is found?"

[2] In that case plaintiff's grantors located the premises in controversy as a placer claim. The grantor of the defendant subsequently located two lode mining claims thereon. The defendant applied for

201 F.—53

a patent. The plaintiff filed an adverse claim, and brought action under the statute to determine the rights of the parties. The question at issue in that case, and which was decided by the court, was whether the mineral contained in the land in controversy was subject to location as placer or as a vein or lode. It was held that the mineral came under the designation of veins or lodes, and hence that plaintiff's right, by virtue of the placer claim, although prior in time of location to that of defendants, could not be maintained. In other words, as the land was not subject to location as a placer claim, plaintiff obtained no possessory right thereto. The court in that case necessarily determined that, in adjudicating upon the possessory right of the parties, the court could investigate and determine every fact involving a valid possessory right, and in so doing, of necessity, could determine and adjudicate the question as to whether the character of the land subjected it to entry under the acts of Congress in the manner claimed. That case is directly applicable here, and we see no reason why, when Congress required that the adverse claimant, to maintain his claim, must invoke the aid of a court of competent jurisdiction to determine the superior right as between the parties, it can be successfully said that the court, in making such inquiry, is prohibited from determining whether the land is subject to location in the mode and manner claimed by one or both of the parties.

[3] So we think that, in determining the rights of the parties in these cases, our decision must rest upon the question as to whether the mineral land in controversy was of a character which entitled it to be located as a placer mine, or whether it could only be entered as a lode mining claim. What may be the binding force and effect of the judgment in this case, in that respect, upon the Land Department, we are not called upon to decide. The question has been discussed by the Supreme Court in Richmond Mining Co. v. Rose, 114 U. S. 576–585, 5 Sup. Ct. 1055, 29 L. Ed. 273; Iron Silver Mining Co. v. Campbell, 135 U. S. 286–299, 10 Sup. Ct. 765, 34 L. Ed. 155; Bennett v. Harkrader, 158 U. S. 441–447, 15 Sup. Ct. 863, 39 L. Ed. 1046; Perego v. Dodge, 163 U. S. 160–168, 16 Sup. Ct. 971, 41 L. Ed. 113; Clipper Mining Co. v. Eli Mining Land Co., 194 U. S. 220, 24 Sup. Ct. 632, 48 L. Ed. 944. In the case of Thallmann v. Thomas, 111 Fed. 277, it was said:

"A valid claim to unappropriated public land cannot be instituted while it is in possession of another who has the right to its possession under an earlier lawful location. Risch v. Wiseman, 36 Or. 484, 59 Pac. 1111, 78 Am. St. Rep. 783; Seymour v. Fisher, 16 Colo. 188, 27 Pac. 240. Nor can such a claim be initiated by forcible or fraudulent entry upon land in possession of one who has no right either to the possession or to the title. Atherton v. Fowler, 96 U. S. 513, 516, 24 L. Ed. 732; Trenouth v. San Francisco, 100 U. S. 251, 256, 25 L. Ed. 626. But every competent locator has the right to initiate a lawful claim to unappropriated public land by a peaceable adverse entry upon it while it is in the possession of those who have no superior right to acquire the title or to hold the possession. Belk v. Meagher, 104 U. S. 279, 287, 26 L. Ed. 735; Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673, 680."

To the same effect is Mt. Rosa Mining, Milling & Land Co. v. Palmer, 26 Colo. 56, 56 Pac. 176, 50 L. R. A. 289, 77 Am. St. Rep. 245.

In the cases under consideration there is nothing to indicate that the appellees' entry upon the premises in question was other than peaceable, and if appellant's earlier location was an unlawful one, the possession under such unlawful location would not prevent appellees from acquiring a valid superior right by virtue of a peaceable adverse entry.

[4] This leaves but a single inquiry, viz.: Was the land in question subject to location as placer mines? Section 2320 provides for the location of mining claims upon veins or lodes of quartz or other rock in place, bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits. Section 2329 is as follows:

"Claims usually called 'placers,' including all forms of deposit excepting veins of quartz or other rock in place, shall be subject to entry and patent under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims, but where the lands have been previously surveyed by the United States, the entry in its exterior limits shall conform to the legal subdivisions of the public lands."

In Eureka Consolidated Mining Co. v. Richmond Min. Co., 4 Sawyer, 302, Fed. Cas. No. 4,548, Justice Field, in defining what was meant by the term "vein or lode," as found in the acts of Congress, said:

"Those acts were not drawn by geologists or for geologists. They were not framed in the interests of science, and consequently with scientific accuracy in the use of terms. They were framed for the protection of miners in the claims which they had located and developed, and should receive such a construction as will carry out this purpose. The use of the terms 'vein' and 'lode' in connection with each other in the act of 1866, and their use in the act of 1872, would seem to indicate that it was the object of the legislator to avoid any limitation in the application of the acts, which a scientific definition of any one of these terms might impose. It is difficult to give any definition of the term, as understood and used in the acts of Congress, which will not be subject to criticism. A fissure in the earth's crust, an opening in its rocks and strata made by some force of nature, in which the mineral is deposited, would seem to be essential to the definition of a lode, in the judgment of geologists. But to the practical miner the fissure and its walls are only of importance as indicating the boundaries within which he may look for and reasonably expect to find the ore he seeks. A continuous body of mineralized rock, lying within any other well-defined boundaries on the earth's surface and under it, would equally constitute, in his eyes, a lode. We are of opinion, therefore, that the term as used in the acts of Congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock. It includes, to use the language cited by counsel, all deposits of mineral matter found through a mineralized zone or belt coming from the same source, impressed with the same forms, and appearing to have been created by the same processes."

See, also, Stevens v. Williams, Fed. Cas. No. 13,414; Cheesman v. Shreeve (C. C.) 40 Fed. 787–792; Book v. Justice Min. Co. (C. C.) 58 Fed. 106–121; Consolidated Wyoming Gold Min. Co. v. Champion Min. Co. (C. C.) 63 Fed. 540; Reynolds v. Iron Silver Min. Co., 116 U. S. 687–695, 6 Sup. Ct. 601, 29 L. Ed. 774; Iron Silver Min. Co. v. Cheesman, 116 U. S. 529–533, 6 Sup. Ct. 481, 29 L. Ed. 712; U. S. v. Iron Silver Min. Co., 128 U. S. 673–679, 9 Sup. Ct. 195, 32 L. Ed. 571; Webb v. American Asphaltum Min. Co., supra.

In United States v. Iron Silver Min. Co., supra, speaking with reference to section 2329, it was said:

"By the term 'placer claim' as here used is meant ground within defined boundaries, which contains mineral in its earth, sand or gravel, ground that includes valuable deposits not in place; that is, not fixed in rock, but which are in a loose state, and may, in most cases, be collected by washing or amalgamation without milling."

The mineral in question is what is known as calcium phosphate or rock phosphate. This rock is found in horizontal veins, or what is commonly called "blanket veins" (Iron Silver Min. Co. v. Mike & Starr Co., 143 U. S. 394, 12 Sup. Ct. 543, 36 L. Ed. 201); the veins being of various thicknesses, from a few inches to five or six feet. The rock is found in place having a dip and a strike, is firmly fixed in the mass of the mountain, and occurs between strata of limestone, chert, and shale. The veins usually occur between a bed of overlying fossiliferous limestone and an underlying bed of hard siliceous limestone. The line of demarcation between the veins of phosphate rock and wall rock of limestone, shale, or chert is well defined and distinct. The distinction between the phosphate rock, having commercial value, and the wall rock, with no commercial value, is readily determined by visual inspection. The phosphate rock is mined by blasting and otherwise, the same as other veins of valuable ore. Its chief commercial value is a soil fertilizer. The rock, after being mined, is reduced at mills for market.

That the rock in question is mineral within the meaning of the mining laws is not only conceded by both parties but sustained by authority. Northern Pac. Ry. v. Soderberg, 188 U. S. 526, 23 Sup. Ct. 365, 47 L. Ed. 575; Webb v. American Asphaltum Min. Co., supra. From a consideration of the whole case, we are clearly of the opinion that the rock in question was subject to location as lode claims, and not as placer.

Such being the view of the trial court, the decrees are affirmed.