## DUFFIELD et al. v. SAN FRANCISCO CHEMICAL CO.

(Circuit Court of Appeals, Ninth Circuit. May 5, 1913.)

No. 2,203.

1. MINES AND MINERALS (§ 38*)—SUIT IN SUPPORT OF ADVERSE CLAIM—ISSUES.

While a suit in support of an adverse mining claim authorized by Rev. St. § 2326 (U. S. Comp. St. 1901, p. 1430), is possessory in character, it necessarily involves not only the questions of priority of location and whether the location was made in compliance with law, but also the question whether the land was subject to location in the manner in which

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

it was attempted to be acquired, and it is competent in such a suit for the court to determine the right of possession as between locators of placer and lode claims upon the same ground.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 87½–113; Dec. Dig. § 38.*]

**2.** MINES AND MINERALS (§ 16*)—MINING CLAIMS—NATURE OF CLAIM—"LODE" —"IN PLACE."

A deposit of calcium phosphate lying in veins or beds of various thickness, having a dip and strike, between solid and clearly defined walls of limestone, is a vein or lode of rock in place within the meaning of Rev. St. § 2320 (U. S. Comp. St. 1901, p. 1424), and subject to entry thereunder only as a lode claim.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 21–23; Dec. Dig. § 16.*

For other definitions, see Words and Phrases, vol. 4, pp. 3479–3480; vol. 5, pp. 4223–4226.]

**3.** MINES AND MINERALS (§ 27*)—MINING CLAIMS—CONFLICTING LOCATIONS.

Where a placer location of mining ground was void because the mineral was in veins or lodes and not subject to placer location, another who went peaceably on the land when it was in fact unoccupied, and made discovery, and performed all the necessary acts to perfect lode locations, acquired valid claims which he may protect by adverse suit.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. §§ 64, 65; Dec. Dig. § 27.*]

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Wm. C. Van Fleet, Judge.

Suit in equity by Morse S. Duffield and Lewis A. Jeffs against the San Francisco Chemical Company. Decree for defendant, and complainants appeal. Reversed.

For opinion below, see 198 Fed. 942.

A. B. Gough, of Montpelier, Idaho, A. L. Hoppaugh, C. B. Jack, and Charles C. Dey, all of Salt Lake City, Utah, for appellants.

Clark & Budge, of Pocatello, Idaho, for appellee.

Before GILBERT and MORROW, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The appellants were the complainants in the court below in a suit against the appellee brought pursuant to section 2326 of the Revised Statutes (U. S. Comp. St. 1901, p. 1430) to determine the right of the parties as respective mining claimants to certain land covered by the claims of both. The appellee's claims are placer claims, and are prior in time to those of the appellants. On the lands occupied by the appellee's placer claims, the appellants located lode mining claims, and the principal question on the appeal is: May the mineral deposit which is in dispute between the parties be secured by placer mining locations, or must it be secured by lode mining locations, and preliminary to that question is the inquiry whether the trial court had jurisdiction to determine it. The mineral deposit in dispute is a zone of calcium phosphate. It lies between clearly defined walls. The overhanging wall is a cherty siliceous limestone of a bluish color, and the foot wall is a similar limestone of a

grayish color. Between the two lies the belt of calcium phosphate about 60 feet in width, of a dark color, with a strike northerly and southerly and a dip westerly, varying from 15 to 45 degrees. The calcium phosphate lies between veins of shale and limestone, which also contain, phosphorous. The individual beds of phosphate vary in thickness from five feet to a few inches. The outcropping of the deposit is visible at points along the surface, and it is the only mineral deposit known to be in the ground in controversy.

[1] Section 2326 of the Revised Statutes, under which the adverse proceeding is had, requires the adverse claimant to commence proceedings in a court of competent jurisdiction to determine the question of the right of possession, and declares that his failure to do so shall be a waiver of his adverse claim. It provides that all proceedings in the Land Office shall be stayed "until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived." It further provides that, after judgment shall have been rendered, the party entitled to the possession of the claim or any portion thereof shall file the requisite proof of his right of possession, and of the requisite amount of labor expended upon the claim, and otherwise comply with the law, "whereupon the whole proceedings and the judgment roll shall be certified by the register to the Commissioner of the General Land Office, and a patent shall issue thereon for the claim, or such portion thereof as the applicant shall appear, from the decision of the court, to rightly possess." By these statutes there was relegated to a court the jurisdiction to determine the right of possession between the adverse claimants. The determination of that question necessarily involves, not only the question which of the adverse claimants was prior in time in making location, and whether the location was made in compliance with the law, but also the question whether the land occupied and covered by the location was subject to location in the manner in which it was attempted to be acquired. In the case at bar, it being stipulated that the appellee was prior in time, and that its locations were made in accordance with the law, the question remained whether the land was subject to location as placer claims. If not, the acts which the placer locators had performed were void, and gave them no right to possession. The appellee contends that the statute does not mean all that its words imply, that there should be read into it the limitation that the court shall determine the right of possession only as that right depends upon compliance with the law as to the manner of making the location and the priority in time of the respective locations. But we see no reason why the language of the statute should not be given the meaning that its words import. It is true that there is lodged in the officers of the Land Department the authority to determine what public land is mineral land, and as such open to mining location, and that the courts will not interfere to control the exercise of that power, but there is no express authority given those officers to decide under which of the two different methods of acquiring mining claims any given mineral land may be located. Nor is the existence of such authority recognized by the decisions. The inference to be drawn from the decisions

is to the contrary. In Richmond Min. Co. v. Rose, 114 U. S. 576–585, 5 Sup. Ct. 1055, 1059 (29 L. Ed. 273), the court said:

"It is in full accord with this purpose that the law should declare, as it does, that when this contest is inaugurated the Land Officers shall proceed no further until the court has decided."

In Iron Silver Min. Co. v. Campbell, 135 U. S. 286, 10 Sup. Ct. 765, 34 L. Ed. 155, the court said: •

"And the purpose of the statute seems to be, that where there are two claimants to the same mine, neither of whom has yet acquired the title from the government, they shall bring their respective claims to the same property in the manner prescribed in the statute before some judicial tribunal located in the neighborhood where the property is, and that the result of this judicial investigation shall govern the action of the officers of the Land Department in determining which of these claimants shall have the patent, the final evidence of title, from the Government."

In Mining Co. v. Tunnel Co., 196 U. S. 337–357, 25 Sup. Ct. 266, 275 (49 L. Ed. 501), the court, referring to sections 2325 and 2326 (U. S. Comp. St. 1901, pp. 1429, 1430), said:

"Reading these two sections together, it is apparent that they provide for a judicial determination of a controversy between two parties contesting for the possession of 'land claimed and located for valuable deposits'; in other words, the decision of a conflict between two mining claims, a decision which will enable the Land Department without further investigation to issue a patent for the land."

In the Circuit Court of Appeals for the Eighth Circuit in Webb v. American Asphaltum Mining Co., 157 Fed. 203, 84 C. C. A. 651, and in San Francisco Chemical Co. v. Duffield (C. C. A.) 201 Fed. 830, it was held that the question whether the ground covered by adverse claimants was subject to location as placer or lode claims was determinable by the court in such proceedings. The decision in Clipper Mining Co. v. Eli Mining Co., 194 U. S. 221, 24 Sup. Ct. 632, 48 L. Ed. 944, which is cited by the appellee, does not involve the question which is here before us. In that case there were placer locations of 102 acres, and subsequently four lode locations were made within that area, which occupied, with the surface ground claimed, about 35 acres. In the adverse proceeding the question was not whether any of the ground was placer ground and subject to a location as such, but the contention of the lode claimants was that the officers of the Land Department had on other grounds rejected the placer locations. The decision went no farther than to hold that the owner of a valid mining location, whether lode or placer, has the right to the exclusive possession and enjoyment of all of the surface, and that one going upon a valid placer location to prospect for unknown lodes against the will of the placer owner is a trespasser, and cannot initiate any right thereto.

[2] Was the land subject to placer locations? Section 2320 (U. S. Comp. St. 1901, p. 1424) describes lode claims as mining claims containing "veins or lodes of quartz or other rock in place, bearing gold, silver, cinnabar, lead, tin, copper, or other valuable deposits," and section 2329 (U. S. Comp. St. 1901, p. 1432) declares the term "placer claims" applicable to "all forms of deposit excepting veins

of quartz or other rock in place." In United States v. Iron Silver Min. Co., 128 U. S. 673, 9 Sup. Ct. 195, 32 L. Ed. 571, Mr. Justice Field said:

"By the term 'placer claim,' as here used, is meant ground within defined boundaries which contains mineral in its earth, sand, or gravel, ground that includes valuable deposits not in place; that is, not fixed in rock, but which are in a loose state, and may in most cases be collected by washing or amalgamation without milling. By 'veins or lodes,' as here used, are meant lines or aggregations of metal imbedded in quartz or other rock in place."

In Northern Pacific Ry. Co. v. Soderberg, 188 U. S. 532, 23 Sup. Ct. 367, 47 L. Ed. 575, Mr. Justice Brown said:

"Placers are merely superficial deposits occupying the beds of ancient rivers or valleys, washed down from some vein or lode."

A mineral lode has been defined to be a mineral bed of rock with definite boundaries in a general mass of the mountain (Stevens v. Williams, 1 McCrary, 480, Fed. Cas. No. 13,413), also any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock (Eureka Consol. Min. Co. v. Richmond, 4 Sawy. 302, Fed. Cas. No. 4,548, affirmed in 103 U. S. 839, 26 L. Ed. 557). And a vein or lode is in place within the meaning of the statute when it is inclosed in a general mass of what is known as country rock, that general bed of the country which remains in its original state unaffected by the action of the elements. In Stevens v. Williams, Mr. Justice Miller said:

"And there I want to say that by rock in place I do not mean merely hard rock, merely quartz rock, but any combination of rock, broken up, mixed up with minerals and other things, is rock, within the meaning of the statute."

And in Mining Co. v. Cheesman, 116 U. S. 529, 6 Sup. Ct. 481, 29 L. Ed. 712, the court said:

"Excluding the waste, slide, or débris on the surface of the mountain, all things in the mass of the mountain are in place."

In the Eureka Case, 4 Sawy. 302, Fed. Cas. No. 4,548, Mr. Justice Field said:

"We are of opinion, therefore, that the term as used in the acts of Congress is applicable to any zone or belt of mineralized rock lying within boundaries clearly separating it from the neighboring rock. It includes, to use the language cited by counsel, all deposits of mineral matter found through a mineralized zone or belt, coming from the same source, impressed with the same forms, and appearing to have been created by the same processes."

In Jones v. Prospect Mt. Min. Co., 21 Nev. 339, 31 Pac. 642, the lode under consideration consisted of broken limestone, boulders, low grade ore, ground gravel and sand, which appeared to have been subjected to the action of water, and it was found to a depth of several hundred feet with the rock on either side "fixed, solid and immovable." The court held that the attempt to draw a distinction based upon the mode or manner or time of its deposit would be utterly impracticable and useless, and said:

"Mineral so found, no matter where it was originally found or deposited, is in place within the meaning of the law."

Within these definitions there is no room to doubt that the mineral deposit in controversy in this case was a lode, and was not subject to location as placer. It is not important to inquire how the mineral deposit had its origin, whether mineralized waters have ascended from below through fissures in the rock, and have deposited their solutions therein, or the deposit has been washed into the fissures by the elements, or brought from a distance as alluvium. The mining locator is not required to know the manner in which a mineral deposit had its origin. It is enough for him to know that a mineral deposit in place between walls of rock is a lode, and may be located as a lode claim, and that land containing mineral scattered or diffused through a superficial deposit of sand or gravel not in place may be entered as a placer claim.

[3] It remains to be considered whether the location of the lode claims has been perfected so as to entitle the appellants to the possession. It is stipulated that the physical acts required by law to perfect lode locations were performed, but the appellee contends that in making the locations, the lode claimants were trespassers, and as such they could acquire no rights. It is true that in government land which is in the actual possession of another no right can be initiated by a forcible, fraudulent, or clandestine entry for the purpose of locating a claim thereon, and that pending discovery the actual possession of an intending locator of a mining claim will be protected, to permit him to explore further for mineral, and to prevent breaches of the peace. But it is equally true that if while he is so engaged another enters the land peacefully and not clandestinely or fraudulently, and first makes discovery, he shall be prior in right. Those principles have no direct bearing upon the question presented in this case. The appellee's placer claims had been located after discovery, but at the time when the appellants' lode locations were made the premises were unoccupied. On November 15 and 16, 1907, the appellants peaceably entered upon the ground and put up notices at discovery points for the several lode claims. On November 20th they returned, and by November 25th they completed making the survey and marking the boundaries. On the following day they returned and remained until December 9, 1907, and performed discovery work for each of the lode claims. While they were engaged in such discovery work, one of the agents of the appellee informed them that the ground had been located and belonged to the appellee, and ordered them off. While the annual work for 1908, 1909, and 1910 was being done by the appellants, objections were made by the appellee. But the important facts shown by the record are that the appellants went upon the land when it was vacant and unoccupied, made discovery, and performed all the necessary acts to perfect lode locations thereon. This they had no right to do if there were valid placer claims covering the same ground. But, if we are right in our conclusions, the placer claims were void, and the lands were open to location by lode claimants. In Nome & Sinook Co. v. Snyder, 187 Fed. 385, 109 C. C. A. 217, this court said:

"The location being void, the ground remained as if none had been made, and was unappropriated mineral land, subject to location by others."

Any scheme by which it is sought to locate lode mines as placers, and secure the same as placers, is a fraud upon the government, and a location so made is void. The appellants finding the lode mining ground so located had the right to regard the locations as void, and locate the ground in a lawful manner in order to present to the Land Department the question of their right to acquire the same. If the appellee's contention is correct, there was no way in which that question could be brought on for hearing, either in the Land Department or before a court, and the wrongful possession of the land by placer claimants who were trespassers effectually barred the lawful entry of the same by lode locators. Such is not the law. In Belk v. Meagher, 104 U. S. 279, 26 L. Ed. 735, the court said:

"He had made no such location as prevented the lands from being in law vacant. Others had the right to enter for the purpose of taking them up, if it could be done peaceably and without force."

See, also, Johnson v. Towsley, 13 Wall. 72, 20 L. Ed. 485; Nevada Sierra Oil Co. v. Home Oil Co. (C. C.) 98 Fed. 673; Thallman v. Thomas, 111 Fed. 277, 49 C. C. A. 317; San Francisco Chemical Co. v. Duffield (C. C. A.) 201 Fed. 830.

The decree is reversed, and the cause is remanded to the District Court, with instructions to enter a decree for the appellants.